THE STATE EX REL. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. GEORGE F. HAID ET AL., Judges of St. Louis Court of Appeals.— 37 S. W. (2d) 437.

Division Two, March 25, 1931.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for relator.

*Mark D. Eagleton* and *Allen, Moser & Marsalek* for respondents.

COOLEY, C.—Certiorari to the St. Louis Court of Appeals brought by relator to quash the opinion of respondents, judges of said court, in a certain cause in which Robert William Seidel was plaintiff and relator herein was defendant. Plaintiff Seidel obtained judgment against defendant railway company for $7500, which the court of appeals affirmed. Relator seeks to quash respondents' opinion on the ground that it is in conflict with certain decisions of this court in failing to hold that upon the facts stated plaintiff was, as a matter of law, engaged in interstate commerce, in which event he could not recover under the pleadings. The opinion of the court of appeals is reported in Seidel v. St. L.-S. F. Ry. Co., 18 S. W.

(2d) 126. We set out the parts thereof that present the question to be determined.

"This is an action for damages for personal injuries sustained by plaintiff on August 23, 1926. Plaintiff was employed by defendant and was working near its station in St. Louis County, Missouri.

"At the time plaintiff received his injuries, he was engaged in disconnecting old rails which had come out of defendant's main-line track. From plaintiff's evidence it appears that defendant had furnished him a chisel for doing this work which was defective, and that when he struck this chisel with a spike maul a piece of metal from the chisel flew up and struck him in the eye, causing him to lose the sight thereof. He recovered judgment for $7,500, and defendant appealed.

"Plaintiff tried his case below upon the theory that he was engaged in intrastate commerce, while the defendant insists, and insisted in the court below, that he was engaged in interstate commerce.

"It is unnecessary to refer particularly to the pleadings, because they are not in question on this appeal. Defendant insists that the evidence shows conclusively that plaintiff was engaged in interstate commerce, while plaintiff insists that it was a question for the jury, and that there being substantial evidence to support the finding of the jury upon this issue, the judgment should be affirmed.

"The evidence as offered on the part of the plaintiff, with respect to the nature and character of the work he was doing, is that these rails upon which he was working had been removed from defendant's main-line track . . . These rails were removed from the main-line track and placed by the side thereof, about six or eight feet away. Plaintiff was disconnecting these old rails at the time he received his injury. The usual method of disconnecting these old rails after they had been removed from the main-line track was for one employee to hold the chisel against the bolt or metal piece sought to be disconnected, while another employee would strike the chisel with a maul. It was while so engaged that plaintiff was injured. Plaintiff said he had nothing whatever to do with removing the rails from the roadbed, and that the work in which he was engaged did not interfere in any way with the movement of the trains over defendant's main-line tracks. These old rails on which he was at work were on defendant's right of way. When these old rails would be removed from the track and placed upon the right of way they would be left connected until later, at which time they would be disconnected and removed from the right of way.

"It is a conceded fact that the defendant is a railroad company engaged in interstate commerce. Defendant's evidence discloses that they were removing the old rails from the track and replacing them with heavier rails; that at the time of the accident plaintiff

was working on defendant's main-line right of way on these old rails which had been removed from the track, and that these old rails would be cleaned up and removed from the right of way as a last step in the process of the installation of the heavier rail, and that when these old rails were disconnected the work train would come along and take them away.''

Respondents then referred to Pedersen v. Delaware, Lackawanna & Western Railroad Co., 229 U. S. 146, cited by defendant, and said: ''The facts in that case are entirely different from the case at bar. So far as the plaintiff's evidence discloses, he was not engaged in any manner in connection with interstate commerce. There is nothing to show that the old rails were to be replaced in the main-line track or removed to some other State. There is also nothing to show that these rails or the work in which plaintiff was engaged interfered in the least with the operation of defendant's trains. There is also nothing to show that plaintiff had anything to do with removing the rails from the main-line track, or did any work in connection with replacing the old rails with the new. Therefore, to say the least, it was a jury question as to whether or not plaintiff at the time he received his injury was engaged in intrastate commerce or interstate commerce. [Hudson & M. R. Co. v. Iorio, 239 Fed. 855; Fenstermacher v. R. I. Ry. Co., 309 Mo. 475, 274 S. W. 718.]''

Relator contends that upon the facts stated plaintiff was as a matter of law conclusively shown to have been employed in interstate commerce at the time of his injury and that in failing so to rule respondents failed to follow the rulings of this court in the following cases: Sells v. A. T. & S. F. Ry. Co., 266 Mo. 155, 181 S. W. 106; Crecelius v. Milwaukee Ry. Co., 284 Mo. 26, 223 S. W. 413; Carter v. St. Louis, Troy & Eastern Railroad Co., 307 Mo. 595, 271 S. W. 358.

In this proceeding we take the facts as stated in respondents' opinion (State ex rel. Raleigh Inv. Co. v. Allen, 294 Mo. 214, 242 S. W. 77), and ''it is not our province to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in the opinion, but only whether upon those facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts.'' [State ex rel. Calhoun v. Reynolds, 289 Mo. 506, 514, 233 S. W. 483.] See also State ex rel. Amer. Pack. Co. v. Reynolds (Mo.), 230 S. W. 642; State ex rel. Met. St. Ry. Co. v. Ellison (Mo.), 224 S. W. 820. Nor is it material what we may think of the question involved as an original proposition. Unless the ruling of the Court of Appeals conflicts with a previous ruling of this court upon equivalent or similar facts we are not authorized to quash its opinion. [State ex rel. Wabash Ry. Co. v. Ellison (Mo.), 204 S. W. 396; State ex rel. Sec.

Mut. Life Ins. Co. v. Allen, 305 Mo. 607, 618, 267 S. W. 379; State ex rel. Am. Press Co. v. Allen (Mo.), 256 S. W. 1049.] We proceed therefore to examine the cases referred to by relator with the view of determining whether or not respondents' opinion contravenes our rulings therein.

In Sells v. A. T. & S. F. Ry. Co., supra, the plaintiff sued in her individual capacity under the state statute for the death of her husband alleged to have been caused by the defendant's negligence. The defendant was an interstate railroad and its train which struck and killed the deceased was an interstate train. The deceased was employed by the defendant as a night watchman or track walker, whose duty it was to walk over and inspect the track and roadbed after each train passed and to see that they were all right before the next train came, and was in performance of such employment when killed. That he was employed in interstate commerce was not disputed. The controversy which the court had to and did decide was over another question. The defendant contended that plaintiff should have sued as administratrix under the Federal statute, and that the evidence did not sustain her individual action under the State statute, and that therefore the demurrer to the evidence should have been sustained. The plaintiff, conceding that the action should have been brought as defendant contended, argued that the defendant waived that question by failing to plead the Federal statute and proceeding to trial as though the suit had been properly brought; a claim which this court denied.

In the Sells case the service being performed by the deceased when killed was directly connected with and in furtherance of the proper and safe movement of interstate commerce. The facts of that case and of this are not alike or similar, therefore it cannot be said that there is conflict between respondents' opinion and the ruling in the Sells case. Moreover, for another reason, conflict cannot be said to exist. The opinion of this court in the Sells case did not receive full concurrence of a majority of the judges of Division One in which the case was decided. The principal opinion was written by WOODSON, J. GRAVES, J., concurred in a separate opinion in which Judge WOODSON concurred. BLAIR, J., concurred in the result only, and BOND, J., dissented. We will not quash an appellate court decision on the ground of conflict with our previous ruling when the alleged ruling was not by a majority of this court in division or en banc. [See State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. (2d) 893.]

Crecelius v. Milwaukee Ry. Co., supra, was a suit brought by the plaintiff as administratrix under the Federal Employers' Liability Act for the alleged negligent killing of her husband, an employee of the defendant railway company, which admittedly was a common carrier engaged in interstate commerce. The plaintiff's evidence

tended to show that decedent was time-keeper for a group of workmen in the employ of the defendant; that his duties required him to keep a record of the men employed, to check them up at least twice daily and to make two daily reports, one by telegraph and one by mail, to his superiors; that he was on his way to make his daily telegraphic report when killed: and that during the day upon which he was killed the men under his observation were employed in part in constructing a temporary track and in part in work upon the main track of the defendant which was used by it in interstate commerce. Upon those facts the court held that deceased might properly be said to have been engaged in interstate commerce. The court in discussing the question said:

"It is obvious, of course, that the work of a time-keeper is an important element in the operation of a railroad, and an invariable incident of construction and reconstruction work in that line of business. . . . Sound business judgment, as evidenced by universal practice, dictates that the services of a time-keeper are an essential element in such work as was here being done. . . . The general principles laid down by the United States Supreme Court are applicable to the facts here involved, and in harmony with what we have said. In substance, that court has said that when the work being done 'was in the nature of a duty resting upon the carrier' (Pedersen v. Del., Lack. & West. Railroad, 229 U. S. 146, 1. c. 151), or when the work being performed 'was a minor task which was essentially a part of a larger one' (Pedersen case, supra, 1. c. 152), or when the act in question 'is so directly and immediately connected with such business (i. e., interstate commerce) as substantially to form a part or a necessary incident thereof' (N. Y. Cent. & H. R. Railroad Co. v. Carr, 238 U. S. 260), or when the employee was engaged in interstate commerce at the time of the injury, 'or in work so closely related to it as to be practically a part of it' (Shanks v. Del., Lack. & W. Railroad, 239 U. S. 556, 1. c. 558; C. B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 1 c. 180) then, in all such cases, the employee is said to be engaged in interstate commerce. Applying these principles as the test, we think that in the case in hand the decedent may properly be said to have been so engaged. In so saying we are conforming to the views of this Court en Banc upon this question on the former appeal. Additional reasons and authorities are set forth in that opinion, and need not be repeated here."

The decision of the Court en Banc referred to was upon a former appeal of the same case, reported in 274 Mo. 671, 205 S. W. 181. In the opinion on the second appeal, 284 Mo. 26, supra, the court said the facts presented were substantially the same as on the former appeal. From the opinion on the first appeal it appears that the work that

day being done on defendant's main track was repair work. The court said (274 Mo. l. c. 683):

"The ultimate facts of this case then, as the trial jury was warranted in finding them from the substantial evidence adduced, ran thus: Deceased, on the day he was killed, was working as a timekeeper for a gang of men engaged in repairing the main track of an interstate railroad (and in constructing a temporary track to be used while the grade of the main-line track was being lowered);
. . . "

It is obvious that in the Crecelius case the work being done by decedent when killed, viz., that of time-keeping for workmen engaged in repairing the track, was essentially a part of such repair work and he was therefore employed in the repair of the defendant's track used in interstate commerce and within the protection of the Federal act.

In Carter v. St. Louis, Troy & Eastern Railroad Co., supra, the defendant railroad company was engaged in both intrastate and interstate commerce, its tracks and roadbed being used indiscriminately in both. The plaintiff was employed by it as a section man, his sole duty being to labor on defendant's tracks and roadbed. On the day of his injury he, with other employees, was at work pursuant to his employment, in spreading and leveling cinders along the tracks. He was struck and injured during the lunch period and the principal question considered by the court was whether there had been a temporary suspension of the relation of master and servant. Relative to the character of plaintiff's work as interstate or intrastate, the court said:

"The defendant was engaged in interstate commerce, and its roadbed and tracks were instrumentalities used by it in that commerce. There can be no question therefore but that plaintiff while spreading cinders, a work having for its purpose the repair, maintenance and upkeep of defendant's roadbed and tracks, was employed in interstate commerce. [Pedersen v. Railroad, 229 U. S. 146.] The character of the work just mentioned was the only kind plaintiff was employed to do, so that if he was engaged in the master's service at all at the time he was injured, he was then employed in interstate commerce."

It will be seen that in both the Crecelius case and the Carter case the employee was employed in work the direct purpose of which was the repair, maintenance and upkeep of railroad tracks and roadbed, instrumentalities used in and necessary for carrying on interstate commerce.

In the instant case according to plaintiff's evidence as stated in respondents' opinion, his work did not have such relation to or connection with interstate commerce. The rails upon which he was working had already been removed from the track, and, as we un-

derstand respondents' opinion, from the roadbed; and while they were on the right of-way they were not impeding or interfering with the flow of traffic. The work of removing the old and installing new rails had been completed. With that work plaintiff had nothing to do. It was not shown that the old rails, at the time of plaintiff's injury, were being disconnected for the purpose of being again used in any way in connection with, or transported in, interstate commerce.

The opinion states that defendant's evidence disclosed that "they were removing the old rails from the track and replacing them with heavier rails," and "that these old rails would be cleaned up and removed from the right-of-way as a last step in the process of the installation of the heavier rail." The court could not assume the truth of defendant's evidence.

There is marked difference in the character of the work being done by the employee, as related to interstate commerce, in the instant case from that in the Crecelius and Carter cases. We are not without authority in noting such distinction.

In Perez v. Union Pac. Railroad Co., 52 Utah, 286, the plaintiff was injured while assisting in removing discarded rails after they had been detached by other workmen and taken from defendant's interstate track and laid at the side thereof. The facts, in all essential respects relative to the character of the work as being interstate or intrastate, were analogous to those stated in respondents' opinion herein. The court reviewed many decisions both State and Federal, including those referred to in the above quoted excerpt from Crecelius v. Milwaukee Ry. Co., supra, and while fully recognizing the rule announced by the Federal courts, held that on the facts the plaintiff was not employed in interstate commerce at the time of his injury. The court said:

"If the plaintiff had been engaged in repairing a track admitted or proven to be an interstate track, and what he was doing tended to facilitate transportation from one State to another, in our judgment, he would have been engaged in interstate commerce. But here he was not engaged in repairing the track, rendering it more capable of carrying commerce. If he and his fellow-workmen carrying the rail had not removed it at all from the side of the track where it had been laid by those repairing the track, transportation on the road, so far as the record discloses, would have been just as effectual and commerce could have been carried on without interruption. The old rails might have lain upon the side of the track for an indefinite length of time without inconvenience to interstate travel or transportation. Cases analogous to this have frequently come before the courts, and have generally, if not always, been determined in accordance with the views herein expressed."

In Illinois Central Railroad Co. v. Kelly, 167 Ky. 745, the court had before it a similar question, on facts essentially analogous to those here involved, and held that the plaintiff was not engaged in interstate commerce. Pedersen v. Del., Lack. & W. Railroad Co., supra, is discussed and the rule there announced recognized. The court says that under that rule, had the plaintiff been injured while unloading rails to be used and which were later used in repairing the railroad track he would have had a right of action under the Federal Employers' Liability Act, but makes the distinction between such work and the work of gathering up and removing the discarded rails which had been removed from the track and laid on the ground or subgrade (on the right-of-way) near the track but not interfering with the use thereof.

In a later case, Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Hansford, 173 Ky. 126, involving the same question on similar facts, the Kentucky court followed its prior ruling in the Kelly case.

For the reasons indicated we are satisfied that respondents' opinion is not in conflict with the previous rulings of this court in the cases to which our attention has been called or in any that we have found.

Relator further contends that in ruling that the trial court did not err in refusing defendant's requested Instruction D on assumption of risk, respondents failed to follow certain decisions of this court. The instructions given and refused are not referred to in respondents' opinion and therefore no question of conflict with our decisions on account thereof is presented. Moreover, said instruction was based upon the theory that under the evidence it appeared and the court should have held as a matter of law that plaintiff was engaged in interstate commerce when injured. Relator concedes that if its contention on that point is not sustained said instruction was properly refused.

We are of the opinion that our writ herein should be and it is quashed. *Davis, C.,* absent; *Westhues, C.,* concurs.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.